UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------

DR. PETER LAWRENCE, M.D.,

        Plaintiff,

-against-

NYACK EMERGENCY PHYSICIANS, P.C., DR. IRA MEHLMAN, As Aider and Abettor,

        Defendants.
---------------------------------------------------------------

**DEFENDANTS' STATEMENT OF UNDISPUTED FACTS PURSUANT TO LOCAL RULE 56.1**

06 Civ. 3580 (SCR) (MDF)
*ECF Case*

Defendants' Nyack Emergency Physicians, P.C. ("NEP") and Dr. Ira Mehlman ("Dr. Mehlman"), by their attorneys, Keane & Beane, P.C., for their Statement of Undisputed Facts in Support of Motion for Summary Judgment pursuant to Local Rule 56.1 of the United States District Court for the Southern District of New York, assert the following facts to be undisputed:

## UNDISPUTED FACTS

### I.    The Parties

1. By Stipulation Amending Caption and Summons and Complaint entered on or about June 23, 2006 in this matter, the caption was amended to delete Emtel Nyack Principal's Group as a defendant and to include as a defendant Nyack Emergency Physicians, P.C. See Declaration of Edward F. Beane, Esq. dated December 19, 2007 ("*Beane Dec.*") at Exh. AA.

2. The entity Emtel Nyack Principal's Group ("Emtel") at no time had any direct contractual relationship with Plaintiff. Rather, Emtel is a separate entity located in Houston,

Texas which performed billing and coding for NEP formerly known as Nyack Principal's Group). *Degioanni Depo. at 99:7-25.*[1]

3. Defendant Nyack Emergency Physicians, P.C. ("NEP") is a New York professional corporation that provided management and professional medical services for the Emergency Department (sometimes hereinafter referenced as the "ED") at Nyack Hospital. *Id. See Complaint.*[2]

4. NEP was formerly known as Nyack Principal's Group, Inc. *Degioanni Depo. at 24:8-14.*

5. In or about October, 2002, NEP was retained by Nyack Hospital to manage the Emergency Department and provide emergency medical services at the hospital. *Id. at 12:4-6.*

6. Defendant Ira Mehlman is a medical doctor licensed to practice medicine in the State of New York, was employed by NEP and served as Director of the Emergency Department at Nyack Hospital. *Mehlman Depo. at 24:20-24; Beane Decl. at Exh. BB.*

7. Plaintiff Dr. Peter Lawrence, M.D. is an African-American and a medical doctor. Plaintiff Lawrence also has a law degree. *Lawrence Depo. at 20:8-21:3; Complaint at ¶1.*

8. Plaintiff was employed by NEP as an emergency room physician. *Lawrence Depo. at 22:11-17; Complaint at ¶1.*

9. Plaintiff was employed by NEP from the inception of NEP's contract with Nyack Hospital in 2002 until NEP ceased to be under contract with the hospital in or about October 2006. *Lawrence Depo. at 22:14-22; Degioanni Depo. at 85:16-19; Complaint at ¶1.*

---

[1] References to deposition testimony are cited as follows: [Name of Witness] Depo. at [page:lines.] Copies of cited excerpts of deposition are attached as exhibits to the Declaration of Edward F. Beane, Esq.

[2] All citing references to the "Complaint" mean the Complaint as amended by So-Ordered Stipulation substituting NEP for Emtel.

10. NEP employed Plaintiff as a staff physician in the ED and retained him as an employee for the entire duration of its (NEP's) contract with Nyack Hospital despite his refusal to sign an Employment Agreement. *Lawrence Depo. at 21:19-22:13.*

### A. Other Relevant Individuals

11. Dr. Joseph Degioanni is the President of NEP. *Degioanni Depo. at 99:21-100:4.*

12. Dr. Degioanni is a medical doctor board certified in Aerospace Medicine and Emergency Medicine. *Degioanni Depo. at 7:4-9.*

13. At all relevant times herein, Mr. David Freed served as Chief Executive Officer of Nyack Hospital.

14. At all relevant times, Dr. John Pellicone was Chief Medical Officer of the Nyack Hospital Medical Staff. *Degioanni Depo. at 67:16-19; Lawrence Depo. at 36:21-23.*

15. As Chief of the Medical Staff of Nyack Hospital, Dr. Pellicone oversees quality control issues at the hospital, including specifically, management of the Emergency Department. *Degioanni Depo. at 78:10-13.*

16. At all times relevant to this matter, Dr. Richard King was President of the Medical Executives of Nyack Hospital. *Lawrence Depo. 29:17-22.*

### B. The Relationship Between NEP and Nyack Hospital

17. The contract between Nyack Hospital and NEP ended on or about October 31, 2006. *Degioanni Depo. at 10:13-15; Lawrence Depo. at 22:14-22.*

18. The original contract between NEP and Nyack Hospital covering the term from September 1, 2002 to August 31, 2005 was renewed on September 1, 2005 for a three-year term. *Degioanni Depo. at 10:20-11:9.*

19. The contract between NEP and Nyack Hospital was ended by mutual agreement at the initiative of NEP due to financial considerations of NEP. *Degioanni Depo. at 11:2-24.*

20. NEP initially hired the majority of ED physicians then employed in the Nyack Hospital Emergency Department, including Plaintiff, when NEP assumed operations of the Emergency Department. *Degioanni Depo. at 12:21-23; Lawrence Depo. at 16:5-12; 17:10-18:8.*

21. At the time that NEP assumed administration of the Nyack Hospital Emergency Department, NEP, at the direction of Nyack Hospital, recruited an outside physician to serve as the Director of the Emergency Department. *Degioanni Depo. at 20:22-21:25.*

22. The first Emergency Room Director hired by NEP, a Dr. Chachkes, was terminated on the direction of David Freed, CEO of Nyack Hospital. *Degioanni Depo. at 30:17-31:5, 32:9-25.*

23. Upon the departure of Dr. Chachkes, the first Nyack Hospital ED Director hired by NEP, began a search for a new permanent Director. During that search, Plaintiff was appointed as Interim Director of the Emergency Department. *Degioanni Depo. at 33:19-24; Lawrence Depo. at 45:4-22; Beane Decl. at Exh. CC.*

24. David Freed, CEO of Nyack Hospital, agreed to the appointment of Plaintiff as Interim Director. *Degioanni Depo. at 34:13-22.*

25. Thereafter, Plaintiff was requested to be a candidate for appointment as permanent Director of the Emergency Department. *Lawrence Depo. at 35:22-36:6; Degioanni Depo. at 39:8-18.*

26. Dr. Degioanni, President of NEP, interviewed all candidates for the permanent position of Emergency Department Director and reported to David Freed, CEO of Nyack Hospital. *Degioanni Depo. at 38:22-39:18.*

27. Dr. Degioanni did not make recommendations concerning who should be hired as permanent Director but did inform Nyack Hospital CEO, David Freed, that Plaintiff "had done a good job" in the ED. *Degioanni Depo. at 38:22-39:18.*

28. Dr. Degioanni presented a number of candidates, including both Defendant Mehlman and Plaintiff, to a selection committee appointed by Nyack Hospital and the decision as to whom NEP should hire as the Director of the Emergency Department was made by the Nyack Hospital committee. *Degioanni Depo. at 39:23-40:21.*

29. Defendant Mehlman was interviewed by officials from Nyack Hospital concerning his candidacy for employment as Director of the Nyack Hospital Emergency Room. These officials included David Freed, CEO of Nyack Hospital, the Vice President of Nursing, the head of Surgery and Dr. John Pellicone, Chief of Medical Staff. *Mehlman Depo. at 17:17-18:5.*

30. Plaintiff also was interviewed by the Nyack Hospital Committee. *Lawrence Depo. at 36:5-13.*

31. Plaintiff informed the selection committee that he did not want the position of Director of the ED Department. *Id at 41:15-24.*

32. Defendant Mehlman had not been employed previously at Nyack Hospital at the time he applied for the position of Director of the Emergency Department. *Mehlman Depo. at 24:20-24; Beane Decl. at Exh. BB; Lawrence Depo. at 37:21-24.*

33. David Freed, CEO of Nyack Hospital, informed Dr. Degioanni of the committee's selection of Dr. Mehlman as Director of the Emergency Department and NEP thereafter hired Dr. Mehlman as such. *Degioanni Depo. at 41:11-21.*

34. The selection of Dr. Mehlman as Director of the ED was announced by Nyack Hospital and NEP together. *Lawrence Depo. at 38:14-25.*

### C. Defendant Mehlman's Tenure As Director of the Emergency Department

35. Dr. Mehlman commenced his employment as Emergency Department Director in late autumn 2003. *Degioanni Depo. at 43:8-12; Mehlman Depo. at 10:11-19.*

36. From the beginning of Defendant Mehlman's employment by NEP, his intention was to stay at Nyack Hospital for only two (2) to three (3) years which intention he communicated to NEP. Therefore, NEP was seeking an Assistant Director to train and then fill the Director position when Dr. Mehlman stepped down from that position. *Mehlman Depo. at 102:12-20; Degioanni Depo. at 105:18-106:6.*

37. A new Emergency Department Director was identified and hired in November 2005. *Mehlman Depo. at 103:7-10.*

38. Defendant Mehlman served as Director of the Emergency Department until November 2005. Thereafter, he served as Associate Director through January 2006 and then as a staff physician from January 2006 until on or about November 1, 2007, i.e., until the termination of NEP's relationship with Nyack Hospital. *Mehlman Depo. at 25:6-12.*

39. When Defendant Mehlman became Director, he promulgated a policy concerning "linkage" between doctors and mid-level providers (such as physicians' assistants). *Mehlman Depo. at 40:9-41:25.*

40.    Thereafter, Dr. Mehlman promulgated additional policies emphasizing the requirement that there be "linkage" between physicians and mid-level providers. *Mehlman Depo. at 28:24-14, 83:22-25;* see also *Beane Decl. at Exhs. N, O, P, Q and S (at Attachment No. 3).*

41.    A mid-level provider is also known as a "physician extender," and is a physician assistant or nurse practitioner who typically works under the supervision of a physician. *Mehlman Depo. at 48:19-25.*

42.    The afore-mentioned policies concerning mid-level providers were communicated to the ED staff. *Mehlman Depo. at 96:16-97:7.*

### D. Evidence of Plaintiff's Attitude Toward Supervision in General and Defendant Mehlman In Particular

43.    Plaintiff was aware of the various policies concerning mid-level providers/physician assistants issued by NEP prior to May 25, 2005. *Lawrence Depo. at 124:19-125:8; 125:25-126:2; 128:12-17; 131:14-24.*

44.    Incredibly, Plaintiff maintained that, notwithstanding Defendant Mehlman's position as Director of the Emergency Department and Plaintiff's position as a staff physician in the ED, Defendant Mehlman was not Plaintiff's supervisor while he was employed by NEP in that department. *Lawrence Depo. at 215:11-15.*

45.    Yet, when pressed, Plaintiff admitted that Defendant Mehlman, as the Director of the Emergency Department, was his "boss." *Lawrence Depo. at 216:2-4.*

46.    Plaintiff then also admitted that, as Plaintiff's "boss," Dr. Mehlman had the right to give directions to Plaintiff. *Lawrence Depo. at 216:9.*

47.     Plaintiff also admits that Dr. Mehlman had the right to assign shifts to the ED staff physicians and to set policies for the Emergency Department, and that Plaintiff, as one of the staff physicians employed in the Emergency Department, was required to comply with those directives. *Lawrence Depo. at 216:19-217:5.*

### E. The May 26, 2005 Emergency Room Events

48.     On May 26, 2005, an incident occurred in the Nyack Hospital Emergency Room involving a patient who had suffered a miscarriage.

49.     On that day, May 26, 2005, Plaintiff was the physician on duty in the ED from 12:00 noon to 12:00 a.m. *Lawrence Depo. at 99:5-10.*

50.     Another physician, a Dr. Mark Khilnani, was a physician on duty in the ED from 7:00 p.m. to 7:00 a.m. on May 26, 2006. *Mehlman Depo. at 57:8-10; Lawrence Depo. at 99:22-23.*

51.     Dr. Khilnani was less experienced than Plaintiff as he, Khilnani, was a recent medical school graduate. *Mehlman Depo. at 133:18.*

52.     Although not African-American, Dr. Khilnani is not Caucasian. *Lawrence Depo. at 280:2-18 (Dr. Khilnani is Indian).*

53.     One staff physician was about to terminate his shift at 7:00 p.m. *Lawrence Depo. at 99:11-18.*

54.     Defendant Mehlman was not working in the ED on the evening of May 26, 2005. *Lawrence Depo. at 109:3-5.*

55.     By his own admission, Plaintiff was informed of the presence of the patient in question at 6:35 p.m., shortly after the patient came to the ED and prior to the start of Dr. Khilnani's shift. *Beane Decl. at Exh. Z*[3].

56.     Plaintiff admits that he ordered the nurse who informed him of the presence of the patient to contact a mid-wife from the Obstetrics Department and to place the patient's chart on the board to be seen by a physician. *Beane Decl. at Exh. Z;* see also *Lawrence Depo. at 101:24-102:19 (wherein Plaintiff changes his version of events from his June 16, 2005 written account).*

57.     The patient remained in the ED continuously during Plaintiff's shift.

58.     The patient's emotional state apparently degraded during the time she was in the emergency room resulting in her call to the police alleging that she had been assaulted in the ED.

59.     Police responded to the Nyack Emergency Department. *Lawrence Depo. at 104:25-105:4, 108:15-18.*

60.     Plaintiff was the Emergency Department physician with the most seniority on duty during the patient's presence in the ED and at the time the police arrived in the ED. *Mehlman Depo. at 80:7-81:21.*

61.     Plaintiff was present in the Emergency Department and observed a police officer there, yet he did not inquire as to the reason for the police presence. *Beane Decl. at Exh. Z; Lawrence Depo. at 104:25-106:4, 108:7-21.*

62.     Plaintiff admitted that he saw a policeman standing in the emergency room for a long period of time. Plaintiff eventually approached the police officer and apologized to the officer for the fact that the officer had been standing there for "so long." *Id. at 105:23-106:4.*

---

[3] Despite acknowledging that he received initial notification about the patient at 6:35 p.m. as confirmed in a memo he wrote on June 16, 2005 *(Beane Decl. at Exh. Z)*, Plaintiff changed his version of events during deposition at which time he claimed he did not know about the patient until after 7:00 p.m. *Lawrence Depo. at 100:3-101:22.*

63.     The police officer asked Plaintiff for "someone in charge." *Id. at 108:14-18.*

64.     In response to the police officer's request to speak with "someone in charge," rather than identify himself as the physician with the most seniority in the ED at the time, Plaintiff led the officer to the head nurse. *Id. at 108:14-18; Beane Decl. at Exh. Z.*

65.     Plaintiff admits he never even asked the policemen why he was present in the emergency room on the evening of May 26, 2005. *Id. at 174:11-17.*

66.     During the time Plaintiff was present on his shift in the ED and the patient was in the ED, i.e. from 6:35 p.m. to 12:00 a.m., the patient was not seen by an Emergency Department physician. *Lawrence Depo. at 102:22-104:17.*

67.     Although the patient was seen by a mid-wife from the Obstetrics Department as directed by Plaintiff, and a physician's assistant, no ED physician interacted with the patient until the early morning hours of May 27, 2005, in contravention of policies previously promulgated for the Emergency Department. *Id.; Mehlman Depo. at 62:13-24; Beane Decl. at Exh. E.*

F.     **NEP Management Learns of the May 25, 2005 Incident from <u>Nyack Hospital CEO Freed</u>**

68.     Dr. Degioanni, President of NEP, first learned of the May 26, 2005 incident which had taken place in the Emergency Room on May 27, 2005 via a phone call from David Freed, CEO of Nyack Hospital. *Degioanni Depo. at 53:10-15.*

69.     Defendant Mehlman first was informed of the May 26, 2005 incident when he received a telephone call on May 27, 2005 and was then interrupted during clinical duties by Nyack Hospital CEO, David Freed and Maureen Schneider, Vice President of Nursing at Nyack Hospital. *Mehlman Depo. at 51:22-52:15; 58:8-59:6.*

70. Mr. Freed specifically identified Plaintiff as someone involved in the incidents of May 25, 2005. *Id. at 55:9-17.*

71. Defendant Mehlman informed Freed and Schneider that he had not been present during the incident of May 26, 2005. In response to their questions, he stated that he did not know why Plaintiff had not seen the patient in question, but did note that, although it was important for the patient to be seen for humanistic and other reasons, it may not have been a medical emergency and Plaintiff may have been busy with more critical patients. *Mehlman Depo. at 58:5-18.*

72. Thereafter Defendant Mehlman attempted to reach Plaintiff Lawrence concerning the incident. *Mehlman Depo. at 58:19-20.*

73. These events occurred on the afternoon of May 27, 2005. *Mehlman Depo. at 58:25-59:5.*

74. Despite Defendant Mehlman's e-mail to Plaintiff seeking information concerning the events of May 26, 2005 directly from Plaintiff as an NEP employee identified by Nyack Hospital as being involved in those events, Plaintiff failed to respond to the e-mail. See *Beane Decl. at Exh. DD; Lawrence Depo. at 109:19-110:17; 111:19-116:7. (Plaintiff does not recall ever responding to the Mehlman e-mail).*

75. The May 26, 2006 incident injured the relationship between NEP and Nyack Hospital in that the hospital considered the incident to involve a perceived failure of linkage of doctors and mid-level providers and was so serious that the CEO of Nyack Hospital actually removed the Director of the Emergency Department from clinical duties to confront him concerning the incident. *Mehlman Depo. at 55:9-17, 70:16-71:11.*

76.     The confrontation by the Nyack Hospital CEO of Defendant Mehlman and interruption of clinical duties was a unique event. *Mehlman Depo. at 71:16-24.*

77.     On May 28, 2005, Defendant Mehlman again e-mailed Plaintiff concerning the May 25, 2005 events. *Beane Decl. at Exh. X.*

78.     Defendant Mehlman's e-mail of 2:00 p.m. on Saturday, May 28, 2005 to Plaintiff was intended to convey Defendant Mehlman's concern, as Director, that Plaintiff did not understand the severity of the May 26, 2005 situation and to attempt to have Plaintiff understand why the patient in question should have been seen by Plaintiff, the senior doctor working in the department at the time. *Mehlman Depo. at 109:18-111:21; Beane Decl. Exh. X.*

G.  **Plaintiff's Claims**

   1.  **Plaintiff's Own Testimony Contradicts Claims in the Complaint**

79.     Plaintiff provided the facts asserted in the Complaint and reviewed the Complaint prior to its filing. *Lawrence Depo. at 57:24-60:23.*

80.     The Complaint is incorrect when it asserts that Plaintiff was the only African-American employed by NEP in the Nyack Hospital ED. *Lawrence Depo. at 61:19-62:4.*

81.     Plaintiff was not the only African-American physician employed by NEP during NEP's tenure at Nyack Hospital. In fact, Dr. Sam Jones was an African-American physician employed in the Emergency Department on the date of the Complaint. *Lawrence Depo. at 61:19-62:7.*

82.     Additionally, Dr. Augustine Alifo was another African-American physician offered employment in the Emergency Department as Assistant Director during the time the Plaintiff was employed by NEP. *Lawrence Depo. at 73:18-23; Mehlman Depo. at 140:24-142:3.*

83. Dr. Deborah White, an African-American woman, also was offered employment in the Emergency Department during Plaintiff's employment with NEP. *Lawrence Depo. at 138:14-140:15.*

84. Notwithstanding his allegations in the complaint, Plaintiff admits that, prior to the particular medical case which occurred on May 26, 2005 and the events related thereto, Defendant Mehlman did not blame him for any prior problems on prior cases. *Lawrence Depo. at 64:23-65:3.*

85. Plaintiff also admits that certain conduct of Defendant Mehlman about which he now complains was not directed solely at him; rather, Plaintiff asserts that it only was "mostly" against Plaintiff. *Lawrence Depo. at 90:4-16.*

86. Contrary to his assertion in the Complaint, Plaintiff admits that publication of the contents of Defendant Mehlman's e-mails to Plaintiff dated May 27 and May 28, 2005 was made by Plaintiff himself, not Defendants. *Lawrence Depo. at 138:4-10.*

87. It was Plaintiff himself who forwarded the e-mails to other individuals and therefore disclosed their contents. *Lawrence Depo. at 142:6-9.*

88. Plaintiff also communicated the events resulting from the May 25, 2005 to other NEP and Nyack Hospital personnel. *Lawrence Depo. at 285:8-13.*

## H. Assignment of Shifts

89. As Director of the Emergency Department, Defendant Mehlman solicited from the Emergency Department staff physicians their preferences concerning shifts. Dr. Mehlman generated a matrix to be completed by each Emergency Department physician concerning his or her preferences for (a) number of shifts and (b) times of shifts. *Mehlman Depo. at 19:8-18; Beane Decl. at Exh. M.*

90. Plaintiff routinely requested to work only day shifts, (7:00 a.m. to 7:00 p.m.) and no Sundays. *Mehlman Depo. at 21:2-9, 57:2-3;* see also *Beane Decl. at Exhs. M and S.*

91. During Defendant Mehlman's tenure as Director of the Emergency Department at Nyack Hospital, Plaintiff was the only doctor who requested that he not be assigned night shifts nor any shifts on Sundays. *Mehlman Depo. at 137:25-138:6.*

92. Although Defendant Mehlman attempted to accommodate Plaintiff's requests concerning shift assignments, Plaintiff's requests were incompatible with staffing requirements for the Emergency Department and unfair to the other staff physicians. No one staff physician in the ED could be given only day shifts, because it would leave only ten day shifts to be split among all other Emergency Department physicians. Similarly no one physician could be guaranteed to work only days other than Sundays because it would require all Sunday shifts to be assigned to other emergency room physicians. *Mehlman Depo. at 22:8-23:23:4, 23:23-24:13.*

93. As Emergency Department Director, Defendant Mehlman would not assign six shifts in consecutive days to the same staff physician if such scheduling could be avoided, as each shift is 12 hours and such an assignment could raise safety issues. *Mehlman Depo. at 137:11-16;* see also *Lawrence Depo. at 47:20-49:5 (confirming 12-hour shifts).*

94. Prior to the May 26, 2005 incident, Plaintiff never complained about the assignment of shifts. *Mehlman Depo. at 22:17-19.*

95. Plaintiff admits he never issued a written complaint of any kind to Defendant Mehlman or Dr. Mehlman's superiors at NEP concerning scheduling issues and what he now asserts as complaints concerning scheduling of shifts by Defendant Mehlman. *Lawrence Depo. at 240:2-20.*

96.     Doctors employed by NEP in the Nyack Emergency Department typically worked 13 to 18 shifts per month. *Mehlman Depo. at 137:8-24.*

97.     Plaintiff admits he was not the only staff physician who did not have all of his or her requests concerning shifts granted. *Lawrence Depo. at 178:15-179.*

98.     Plaintiff admits that, after Defendant Mehlman no longer served as Director of the Emergency Room, the next Director engaged in similar practices concerning the assignment of shifts. However, Plaintiff does not attribute those shift assignments by the subsequent Director to racial discrimination. *Lawrence Depo. at 179:17-180:4.*

99.     In fact, Plaintiff himself requested fewer shifts because he was also employed in the emergency department of another hospital. *Lawrence Depo. at 180:5-7.*

100.    Plaintiff worked in the emergency rooms of both Phelps Memorial Hospital and Passcack Valley Hospital at the same time he worked at Nyack Hospital. *Lawrence Depo. at 50:17-51:9.*

### I.  Plaintiff Disregards Dr. Mehlman's Communication

101.    Plaintiff has never produced any response to Defendant Mehlman's May 27, 2005 e-mail to Plaintiff. *Lawrence Depo. at 115:19-116:9.*

102.    Plaintiff admits that he does not have any recollection of ever contacting Defendant Mehlman in any manner to respond to that investigative e-mail. *Lawrence Depo. at 122:14-123:4.*

103.    Plaintiff never spoke with Defendant Mehlman about the May 26, 2005 incident. *Lawrence Depo. at 140:12-16.*

104.    Plaintiff claims that Defendant Mehlman's investigatory May 27, 2005 e-mail is "criticism" of Plaintiff. *Id. at 118:18-119:15.*

105. Plaintiff admits that, during his employment with NEP, he was aware that Nyack Hospital officials had direct say in the manner in which he performed his job, and if he did something that displeased the hospital management, such displeasure would be communicated to him either directly or through the ED Director. *Lawrence Depo. at 33:24-34:15.*

106. Moreover, such situations, i.e. the communication of Nyack Hospital's displeasure, happened with other NEP physicians, not only Plaintiff. *Id. at 34:21-23.*

### J.     The June 9, 2005 Memorandum

107. Following the incident of May 26, 2005, Nyack Hospital CEO, David Freed, directed Defendant Mehlman to issue a written reprimand to Plaintiff. *Mehlman Depo. at 71:25-72:11; Beane Decl. at Exh. D.*

108. Defendant Mehlman issued a memorandum to Plaintiff dated June 9, 2005 as a direct result of the written directive of Nyack Hospital CEO David Freed. *Id.;* see also *Beane Decl. at Exh. T (EEOC correspondence concluding that June 9, 2005 memo was issued "at the request of Hospital Leadership").*

109. The June 9, 2005 memorandum of reprimand about which Plaintiff complains had no impact on Plaintiff's compensation, benefits, privileges or responsibilities as a staff physician in the Nyack Hospital ED. *Lawrence Depo. at 174:18-2.*

110. Defendant Mehlman felt that it was "unfathomable" that the senior doctor in the department would not get involved when a situation had deteriorated to the point of police involvement, but rather would take the police officer to a nurse manager and fail to even inquire or otherwise become involved in the matter. *Mehlman Depo. at 115:3-16.*

111. Dr. Degioanni, President of NEP, agreed with the reprimand of Plaintiff Lawrence because Plaintiff was not willing to admit that he had any amount of responsibility whatsoever for the events of May 26, 2005. *Degioanni Depo. at 69:25-70:4.*

112. In fact, Plaintiff admits that his objection to the June 9, 2005 letter is not that it was issued only to him (and not to both him and the other physician on duty on May 26, 2005). Rather, he objects that anyone dared criticize him in any manner or attribute any responsibility for the incident to him. *Lawrence Depo. at 162:2-164:13.*

113. Dr. Degioanni issued a July 6, 2005 letter because Plaintiff was unwilling to be responsive to the concerns of NEP and Nyack Hospital and did not take criticism nor input well. *Degioanni Depo. at 87:12-88:9; Beane Decl. at Exh. F.*

114. Dr. Degioanni issued the letter dated July 6, 2005 to Plaintiff on advice of counsel to NEP. *Degioanni Depo. at 74:3-24.*

115. Following communications with David Freed, CEO of Nyack Hospital and Dr. Pellicone, Chief of the Medical Staff of Nyack Hospital, the July 6, 2005 letter written by Dr. Degioanni to Plaintiff was withdrawn in that it was never enforced or otherwise acted upon. *Degioanni Depo. at 83:17-85:19.*

116. Plaintiff Lawrence refused to sign the letter. *Id.*

117. NEP did not pursue requiring a signature of that letter by Plaintiff and did not discipline Plaintiff in any manner for his failure to sign. *Degioanni Depo. at 83:17-85:19.*

**K.   No Racial Motive**

118. One African-American doctor was employed by NEP as a staff physician and two African-American physicians, a Dr. Deborah White and Dr. Augustine Alifo, were offered employment with NEP, each as a future Director of the Emergency Department, during the

employ of both Plaintiff and Defendant Mehlman. *Mehlman Depo. at 138:14-142:3; Lawrence Depo. at 61:19-62:7.*

119.  In fact, Defendant Mehlman actively recruited Dr. Alifo, an African-American, not only for employment by NEP, but for the position of Assistant Director of the Emergency Department. *Mehlman Depo. at 140:25-141:14.*

120.  Dr. Mehlman had previously issued letters to be included in personnel files of doctors and PA's concerning deficiencies in those employees' conduct. *Mehlman Depo. at 45:2-47:9.*

121.  Dr. Degioanni had issued letters to other emergency room staff physicians which were not enforced, for example a letter of termination to an ED staff physician. *Degioanni Depo. at 102:25-104:20.*

122.  Plaintiff's own testimony belies his claims of racial discrimination because he would have the same objection to the June 9, 2005 memo even if it had also been issued to the other doctor on duty the evening of May 26, 2005. *Lawrence Depo. at 162:21-7; 164:3-13.*

**L.    No Prior Complaints By Plaintiff**

123.  Prior to May 2005, Dr. Degioanni was not aware of any conflict between Plaintiff Lawrence and Defendant Mehlman. *Degioanni Depo. at 45:4-7; see also Lawrence Depo. at 279 (never produced alleged prior complaint)..*

124.  Dr. Degioanni does not recall any complaints by Plaintiff Lawrence concerning Defendant Mehlman's conduct prior to May 2005. *Degioanni Depo. at 45:19-46:2.*

125.  Dr. Degioanni had not received any complaints from any other Emergency Department physicians concerning Dr. Mehlman prior to May 2005. *Degioanni Depo. at 46:8-11.*

126. Defendant Mehlman never received complaints from Plaintiff about his (Mehlman's) conduct prior to May 2005. *Mehlman Depo. at 126:21-24.*

127. Plaintiff admits he never directly asked Defendant Mehlman to refrain from making comments about which he now asserts an objection. *Lawrence Depo. at 81:8-16.*

128. Plaintiff admits that he never complained to any supervisor of Defendant Mehlman or anyone else at NEP that he felt that Defendant Mehlman was racially biased or that he discriminated against him based on race. *Lawrence Depo. at 81:17-82:14.*

**M.   No Adverse Employment Action**

129. The June 9, 2005 letter of reprimand was rescinded by Dr. Pellicone and removed from the records of the hospital. See *Beane Decl at Exh. I;* see also *Transcript of Court Proceedings attached to Beane Decl. at Exh. C at p. 2 (no negative employment record contained in documents reviewed in camera).*

130. Plaintiff was not terminated by NEP. *Lawrence Depo. at 22:14-22.*

131. Plaintiff did not suffer any change in his title, responsibilities, privileges or compensation as a result of the issuance of the June 9, 2005 memorandum. *Lawrence Depo. at 47:3-12.*

**II.   Prior Administrative History**

132. Prior to filing the Complaint, Plaintiff filed a Complaint with the United States Equal Opportunity Commission ("EEOC"). *Beane Decl. at Exh. R.*

133. Defendants denied the claims set forth in Plaintiff's EEOC Complaint. *Id. at Exh. S.*

134. That Complaint was dismissed via a Dismissal and Notice of Right to Sue letter issued by the EEOC on or about February 24, 2006. *Id. at Exh. S.*

135. The EEOC investigation concluded that, not only did Plaintiff "exaggerate" his claims against Defendant Mehlman (citing for example an e-mail in which Dr. Mehlman quoted Jesse Jackson), but also (a) no false accusation was made against Plaintiff without due process, (b) the June 9, 2005 memorandum about which Plaintiff complains was issued at the request of hospital leadership and because Plaintiff was insubordinate, and (c) there is no evidence that Defendants "violated the law because of your race, Black, in violation of Title VII of the Civil Rights Act of 1964 as amended... ." The EEOC concluded that the evidence failed to indicate that a violation of law occurred. *Beane Decl. at Exh. T.*

Dated:   White Plains, New York
         December 19, 2007

                                        **KEANE & BEANE, P.C.**

                                By:     _____
                                        Edward F. Beane (EB 0358)
                                        Donna E. Frosco (DF 2741)
                                        Stephanie L. Burns (SB 3467)
                                        Attorneys for Defendants
                                        445 Hamilton Avenue, 15th Floor
                                        White Plains, New York  10601
                                        (914) 946-4777